UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

NORTHERN DIVISION



FILED
OCT 07 2021

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>Sven Schreiber and Arnaldo Piccinelli,<br><br>Defendants. | 1:21-CR-10016-CBK<br><br>ORDER |

Defendants Sven Schreiber and Arnaldo Piccinelli ("defendants") filed motions to dismiss the government's indictments concerning bribery charges on grounds of improper venue. DEFENDANT SCHREIBER'S MOTION TO DISMISS, doc. 40; MOTION TO DISMISS (Piccinelli), doc. 45.

The series of events that comprise the allegations brought forth against Mr. Schreiber and Mr. Arnaldo Piccinelli span three states: North Dakota, Florida, and – critical to this inquiry – South Dakota. For times relevant to these charges, defendant Schreiber was the Director of the Information Technology Department of the Standing Rock Sioux Tribe of North and South Dakota. While based in Fort Yates, North Dakota, defendant Schreiber's office was responsible for IT needs across both states. Within the Tribe's territory inside South Dakota, the land encompasses all of Corson County. At the crux of this motion is the fact that the Tribe's Wells Fargo bank account is in Mobridge, *South Dakota*. From this bank account Mr. Schreiber received his salary. This Wells Fargo account was the source of funds for payments made to Mr. Piccinelli for his IT consulting on a sole-source, contract basis with the Tribe. Mr. Piccinelli was hired by Schreiber for this contract, where Piccinelli would, among other things, develop and manage webpages for tribal members across North and South Dakota.

Defendants' motions to dismiss contend that this Court does not hold proper venue when the only essential conduct element connected to the District of South Dakota is the location of the Tribe's bank account, which was the source for funds from which alleged bribes were paid out. Defendant Schreiber operated out of North Dakota while defendant Piccinelli would withdraw payments derived from the Wells Fargo account in Florida. Mr. Piccinelli told investigators that on several occasions he "withdrew funds derived from these tribal payments and gave them to Schreiber," when Schreiber was also in Florida. REPORT AND RECOMMENDATION FOR DISPOSITION OF MOTION TO DISMISS, doc. 53 at 2. These payments were, according to the government, kickbacks to Schreiber by Piccinelli over a span of several years.

Critical to United States Magistrate Judge Mark A. Moreno's analysis, as well as this Court's, is the fact all funds paid to defendant Piccinelli came from the Mobridge-based bank account and that Piccinelli – according to what he told investigators – "would submit periodic invoices to Defendant [Schreiber]," "using funds he had been paid as an IT consultant for the Tribe that had been deposited in his personal account. These funds *directly derived* from the Wells Fargo branch located in Mobridge, *South Dakota*." STIPULATION OF FACTS, doc. 42 at 2 (emphasis added) (Schreiber); see also STIPULATION OF FACTS, doc. 46-2 (Piccinelli).

The U.S. Magistrate Judge below correctly noted that two of the four[1] elements that the government must prove pertain to alleged events that took place within this District for both defendants. For Mr. Schreiber: (1) defendant "corruptly solicited, demanded, or accepted from Piccinelli something of value, that is money, in connection with the Tribe's consulting contracts;" and (2) "[t]he contracts involved something of value of $5,000 or more." REPORT AND RECOMMENDATION FOR DISPOSITION OF MOTION TO DISMISS, doc. 53 at 6 (*citing* EIGHTH CIRCUIT MODEL JURY INSTRUCTIONS (CRIMINAL) 6.18.666B (2020 ed.)). And for Mr. Piccinelli: (1) defendant "corruptly

---

[1] "Except as otherwise expressly provided by enactment of Congress, any offense against the United States begun in one district and completed in another, or committed in more than one district, may be inquired of and prosecuted in any district in which such offense was begun, continued, or completed." 18 U.S.C. § 3237(a).

2

gave, offered to give, or agreed to give money to Schreiber in connection with the Tribe's consulting contracts;" and (2) that "[t]he contracts involved something of value of $5,000 or more." Id. at 7 (citing EIGHTH CIRCUIT MODEL JURY INSTRUCTIONS (CRIMINAL) 6.18.666C (2020 ed.)). For both defendants, the money for the contract was derived from the South Dakota bank account, and with it they "reached" into this District. Id. at 9.

When assessing whether venue is appropriate in the given jurisdiction, courts "'must initially identify the conduct constituting the offense (the nature of the crime) and then discern the location of the commission of the criminal acts.'" United States v. Mink, 9 F.4th 590, 601 (8th Cir. 2021) (quoting United States v. Rodriguez-Moreno, 256 U.S. 275, 279 (1999)). Courts may only look at the "'essential conduct elements,' rather than 'circumstance element[s].'" Id. at 601–02 (alteration in original) (quoting Rodriguez-Moreno, 256 U.S. at 280 & n.4).

While no binding authority expressly lays out the appropriateness of venue within this District for these alleged events, Judge Moreno aptly centered his analysis on relevant and persuasive case law, including the United States Court of Appeals' unpublished opinion in United States v. Tortaro and this Court's recent analysis in United States v. Field, as well as other authorities. See id. at 3–10 (citing to, among other case law, United States v. Totaro, 40 Fed.Appx. 321 (8th Cir. 2002) (unpublished); United States v. Field, 1:19-CR-10019-02-CBK (D.S.D.) (unpublished)). This Court's decision in Field is analogous to the facts here; while jurisdiction was even more clearly proper in the District of South Dakota than in this instance, both properly hold venue in this State. In Field, we found venue when (1) emails regarding the purchase of a tent structure and equipment were sent and received from within South Dakota, where a co-defendant resided; (2) the Tribe paid the purchase price for the items via a wire-transfer sent from the Tribe's Sisseton, South Dakota bank account to a Florida escrow account; and (3) "the alleged kickback was paid to [defendant] from the Florida escrow account (using funds sent from the Tribe's bank account)." Id. at 8 (citing Field,1:19-CR-10019-02-CBK at 2–3). Similarly, the United States Court of Appeals for the Eighth Circuit found that "because Totaro's criminal scheme began with the transfer of funds *from bank*

*accounts in South Dakota* to his lending institutions," venue was appropriate within the District of South Dakota. Tortaro, 40 Fed.Appx. at 323 (emphasis added). While neither defendant nor Mr. Piccinelli reside in South Dakota, they nevertheless "reached into South Dakota by using the Tribe's Mobridge-drawn payments to bankroll, or at least subsidize, the asserted kickbacks." REPORT AND RECOMMENDATION FOR DISPOSITION OF MOTION TO DISMISS, doc. 53 at 9.

While cementing this Court's analysis on the location of the Mobridge-based bank account, it is important to note that the likely effect of any alleged bribe would undoubtedly be felt within South Dakota. The Standing Rock Sioux Tribe's Reservation crosses into both North and South Dakota; any contract agreed to within the North Dakota portion of the reservation would undoubtedly lead to lasting effects in Corson County – the South Dakota portion – as well. The United States Court of Appeals for the District of Columbia Circuit as held that "venue for bribery lies only in a district in which the defendant committed unlawful acts and is not proper in a district where only the effects of the crime occur." United States v. White, 887 F.2d 267, 272 (D.C. Cir. 1989). In United States v. White, the Circuit Court held that there was not sufficient venue because the alleged payments between parties were mailed from North Carolina to Maryland, *not* Washington, D.C. Id. However, the White Court specifically mentions that the *bank account* was also located in Maryland – and one deposit also being made in West Virginia –, further showing venue was not proper in Washington, D.C. Id. Unlike in White, not only were the effects of any alleged bribe that took place by defendant Schreiber from his Fort Yates office felt in South Dakota, but the source of the payments were derived from this District as well, providing the crucial grounds for venue for this Court.

By depositing funds from the South Dakota bank account, the defendants sufficiently "reached" into this District and thus made venue proper with this Court. REPORT AND RECOMMENDATION FOR DISPOSITION OF MOTION TO DISMISS, doc. 53 at 9. Centering its analysis on where the "essential conduct elements" for this alleged bribery

scheme took place, namely Florida, North Dakota, and South Dakota, venue is proper with this District.

United States Magistrate Judge Mark A. Moreno issued a report and recommendation to deny defendants' motions on September 22, 2021. Id. Copies of such report and recommendation were served upon the parties as required by 28 U.S.C. § 636 and defendants Schreiber and Piccinelli filed objections to the report and recommendation. DEFENDANT SCHREIBER'S OBJECTION TO MAGISTRATE'S REPORT AND RECOMMENDATION FOR DISPOSITION OF MOTIONS TO DISMISS, doc. 54; DEFENDANT PICCINELLI'S OBJECTIONS TO MAGISTRATE'S REPORT AND RECOMMENDATION, doc. 55. I have conducted a *de novo* review of the record as required by 28 U.S.C. § 636(b)(1)(C). I find that the report and recommendation of the magistrate judge should be adopted because the Court finds, by a preponderance of evidence, that South Dakota is an appropriate venue for the indicted offenses.

Now, therefore,

IT IS ORDERED:

1. The objections of defendant Schreiber, doc. 54, are rejected.
2. The objections of defendant Piccinelli, doc. 55, are rejected.
3. The report and recommendation of U.S. Magistrate Judge Mark A. Moreno filed September 22, 2021, doc. 53, shall be and is hereby adopted.
4. The motions to dismiss, docs. 40 (Schreiber) & 45 (Piccinelli), are denied.

DATED this 5th day of October, 2021.

BY THE COURT:

CHARLES B. KORNMANN
United States District Judge